UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENNETH FLORES, | § | No. 5:16−CV−113−DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| U.S BANK N.A., OCWEN LOAN | § | |
| SERVICING LLC, and ROBERT | § | |
| VALDESPINO | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING MOTION TO REMAND

   Before the Court is a Motion to Remand filed by Kenneth Flores ("Plaintiff") (Dkt. # 3.)  Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the briefs filed in support of and in opposition to the motion, the Court, for the reasons that follow, **DENIES** Plaintiff's Motion to Remand (Dkt. # 3).

BACKGROUND

   On June 21, 2005, Plaintiff obtained a mortgage loan in the amount of $308,026.00 from Fremont Investment & Loan Corporation ("Fremont") to purchase property located at 26403 Windfall, San Antonio, Texas, 78258 ("the Property").  ("Deed of Trust," Dkt. # 3, Ex. 4.)  Plaintiff secured the loan with a

1

Deed of Trust for the Property in favor of Fremont's trustee.  (Id.)  In 2011,
Plaintiff admits that he began to fall behind on his mortgage payments.  ("Orig.
Pet.," Dkt. # 1-1 ¶ 6.)

      According to Plaintiff, in November 2011, he and Ocwen Loan
Servicing, LLC[1] ("Ocwen") entered into a loan modification to resolve the default.
(Id. ¶ 7.)  Plaintiff alleges that Ocwen rescinded the offer and returned his money.
(Id.)  Plaintiff states that on April 3, 2012, his home was sold at a foreclosure sale;
after a lawsuit, the foreclosure was rescinded and the parties signed a loan
modification agreement.  (Id. ¶ 8.)

      According to Plaintiff, on October 1, 2013, Ocwen again foreclosed
on the home.  (Id. ¶ 9.)  On November 21, 2014, Plaintiff states that after a second
lawsuit, Ocwen agreed to rescind the foreclosure and sent Plaintiff a new proposed
modification agreement.  (Id.; Dkt. # 3, Ex. 2.)  The proposed modification
agreement called for a $2,576.60 down payment and $2,576.60 monthly payment
that included principal, interest, and escrow payments.  (Dkt. # 3, Ex. 2.)  The
proposed modification agreement expressly stated that the monthly escrow
payment was $1,068.82.  (Id.)

---

[1] It is not clear to the Court when and how Ocwen became the mortgage servicer.
However, neither party disputes that Ocwen was the mortgage servicer during the
relevant time periods.

On February 9, 2015, Plaintiff and Ocwen executed the proposed loan modification agreement. (Dkt. # 1-1 at 22−23.)  On February 10, 2015, Ocwen sent Plaintiff an executed copy of the loan modification agreement.  (Id. at 21.)  On April 29, 2015, Ocwen sent Plaintiff a mortgage account statement showing that he owed $6,073.73, of which $5,379.37 was past due.  (Dkt. # 1-1, at 25.)  Plaintiff admits that in the fall of 2015, Ocwen sent him notices that he was behind on payments under the loan modification agreement.  (Orig. Pet. ¶ 10.)

On October 6, 2015, Rob Valdespino, substitute trustee for Fremont, conducted a foreclosure sale of the Property.  ("Substitute Trustee's Deed," Dkt. # 3 Ex. 3.)  Notice of the foreclosure was posted at least 21 days prior to the foreclosure sale at the Bexar County courthouse, filed with the county clerk, and served upon Plaintiff by certified mail.  ("Amanda Kish Aff.," Dkt. 3-3 at 5.)  At the sale, Valdespino sold the Property to U.S. Bank, N.A. for $368,880.13. (Substitute Trustee's Deed.)

On December 17, 2015, Plaintiff filed a lawsuit in the 225th Judicial District Court of Bexar County, Texas against U.S. Bank, N.A., Ocwen, and Rob Valdespino (collectively "Defendants").  (Orig. Pet.)  Plaintiff asserted causes of action for breach of contract and quiet title against U.S. Bank, N.A. and Ocwen, and a claim of negligence and breach of contract against Rob Valdespino in his

capacity as a substitute trustee.  (Id.)  Plaintiff also seeks declaratory judgment, an injunction, damages, and attorney's fees.  (Id.)

On February 1, 2016, Defendants U.S. Bank, N.A. and Ocwen removed this action to federal court on the basis of diversity jurisdiction.  (Dkt. # 1.)  On March 3, 2016, Plaintiff filed a Motion to Remand on the basis that Defendant Valdespino destroys complete diversity because he and Plaintiff are citizens of Texas.  (Dkt. # 3.)  Defendants filed a response arguing that Valdespino is an improperly joined party because Plaintiff cannot establish a cause of action against him in state court.  (Dkt. # 4.)  Plaintiff filed a reply.  (Dkt. # 5.)

## LEGAL STANDARD

A party sued may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  The district courts have original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interest, and is between citizens of different states.  28 U.S.C. § 1332.  The rule of complete diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side."  Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008).  However, "the improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)

(citing <u>McDonal v. Abbott Labs.</u>, 408 F.3d 177, 183 (5th Cir. 2005)).  "[T]he

purpose underlying the improper joinder inquiry is to determine whether or not the

in-state defendant was properly joined."  <u>Abbott Labs.</u>, 408 F.3d at 183.  "The

burden is on the removing party; and the burden of demonstrating improper joinder

is a heavy one."  <u>Cuevas</u>, 648 F.3d at 249.

        To establish improper joinder, the removing party must demonstrate

either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the

plaintiff to establish a cause of action against the non-diverse party in state court."

<u>Id.</u> (quoting <u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004)

(en banc)).  In the latter instance, the test is "whether the defendant has

demonstrated that there is no possibility of recovery by the plaintiff against an in-

state defendant, which stated differently means that there is no reasonable basis for

the district court to predict that the plaintiff might be able to recover against an in-

state defendant."  <u>Smallwood</u>, 385 F.3d at 573; <u>Carriere v. Sears, Roebuck & Co.</u>,

893 F.2d 98, 100 (5th Cir. 1990) ("After all disputed questions of fact and all

ambiguities in the controlling state law are resolved in favor of the non-removing

party, the court determines whether that party has any possibility of recovery

against the party whose joinder is questioned.")  However, "[a] mere theoretical

possibility of recovery under local law will not preclude a finding of improper

joinder."  <u>Smallwood</u>, 385 F.3d at 573 n. 9 (internal citations omitted).  To predict

the reasonable basis of recovery under state law, a court must do one of two things: "conduct a Rule 12(b)(6)-type analysis" to determine whether the plaintiff has stated a claim under state law against the in-state defendant, or if a plaintiff has stated a claim, a court may "pierce the pleadings and conduct a summary inquiry." Id.

DISCUSSION

Both parties concede that diversity jurisdiction is the basis of subject-matter jurisdiction in this removed case.  Further, both parties concede that Plaintiff and Defendant Valdespino are citizens of Texas.  Therefore, the question before the Court is whether Valdespino is an improperly joined party so that his citizenship is not considered for purposes of complete diversity.

I.   Whether Defendant Valdespino was Improperly Joined

Plaintiff asserts a breach of contract claim and two theories of negligence against Valdespino as the substitute trustee.  (Orig. Pet ¶¶ 16, 21−23.) Under his claim for negligence, Plaintiff argues that Valdespino breached his duty by not inquiring into "whether or not the [sic] foreclosure should proceed based on the numerous recissions of prior sales," and "proceeded to foreclose in violation of . . . Chapter 51 of the Texas Property Code, the [d]eed of [t]rust, and [m]odification agreement."  (Orig. Pet. ¶ 22.)  Defendants claim that Valdesipino

was improperly joined because there is "no reasonable basis to recover against the substitute trustee in state court." (Dkt. # 4 at 1.)

A substitute trustee has the duty to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust." Marsh v. Wells Fargo Bank, N.A., 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011); see also Hammonds v. Holmes, 559 S.W.2d 345, 347 (Tex. 1977) ("[A substitute trustee] must act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust."). "This duty is breached when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property Code. Marsh, 760 F. Supp. at 708; Sanchez v. Wells Fargo Bank, N.A., No. SA:14-CV-515-DAE, 2014 WL 6090418, at *6 (W.D. Tex. Nov. 13, 2014). Even though a trustee can be held liable for improper foreclosure proceedings, Texas law protects trustees "for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." See Tex. Prop.Code § 51.007(f).

A. Recovery Against Substitute Trustee for Failure to Inquire

Plaintiff argues that Valdespino had a duty to inquire into Ocwen's compliance issues and into whether the foreclosure should proceed. There is no reasonable probability of recovery against Valdespino for failing to investigate or

inquire into Ocwen's conduct concerning the loan modification, prior recessions of foreclosure sales, or even whether Plaintiff was indeed in default.  Under Texas law, a trustee has no affirmative duty to investigate into the validity of foreclosure proceedings "beyond that required by the statute or the deed of trust to ensure a fair sale."  Minella v. Bank of Am., N.A., No. SA:14-CV-174-XR, 2014 WL 1330554, at *3 (W.D. Tex. Apr. 1, 2014) (citing First State Bank v. Keilman, 851 S.W.2d 914, 924 (Tex. App−Austin 1993, writ denied)).  Neither the deed of trust, loan modification agreement, or the Texas Property Code impose an affirmative duty on the substitute trustee to inquire into Ocwen's conduct prior to foreclosure or whether Plaintiff was actually in default.  Accordingly, Valdespino did not breach any duty by an alleged failure to inquire or investigate because no such duty existed.  Minella, 2014 WL 1330554 at *3 (finding the same).

B. Whether Substitute Trustee Failed to Comply with the Deed of Trust or the Property Code

Both the instant deed of trust and the Texas Property Code impose duties upon the substitute trustee to give notice of the foreclosure sale.  The deed of trust requires the substitute trustee to file and post notice at least 21 days prior to the sale and mail a copy of the notice of sale to the borrower.  (Dkt. # 3-4 at 13.) The Texas Property Code imposes similar duties.  First, the note holder must give the debtor "written notice . . . stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of sale can be given."  Tex.

Prop. Code § 51.002(d).  Additionally, the note holder must give the debtor "notice of the sale . . .  at least 21 days before the date of the sale."  Id. § 51.002(b).

In this case, there is no possibility of recovery against the substitute trustee for breaching his duties prescribed by the deed of trust and the Texas Property Code.  Plaintiff does not plead a single fact that the substitute trustee failed to send notice or otherwise failed to comply with a duty created by the deed of trust or by law.  Indeed, the original petition is void of any factual allegation that any Defendant failed to comply with the terms of the deed of trust and the Texas Property Code by not sending a notice of acceleration, notice of default, or notice of foreclosure.  By failing to allege any facts that a defect occurred, there is no possibility of recovery against Valdespino because Plaintiff has failed to state a claim upon which relief can be granted.  See Smallwood, 385 F.3d at 573 (holding that a court must "conduct a Rule 12(b)(6)-type analysis" for improper joinder to determine whether the plaintiff has stated a claim under state law against the in-state defendant).  Accordingly, the Court finds that there is no reasonable basis of recovery for negligence against Valdespino because Plaintiff has failed to allege any facts that Valdespino failed to follow proper notice procedures or otherwise failed to comply with his legal duties as substitute trustee.

B.  Whether the Substitute Trustee Breached a Contract

Plaintiff also asserts a cause of action for breach of contract against Valdespino.  (Orig. Pet. ¶ 16; "Pl. Reply," Dkt. # 5 ¶ 3.)  The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.  Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P., 422 S.W.3d 821, 837 (Tex. App. 2014).

Plaintiff fails to allege the existence of a valid contract between himself and the substitute trustee, Valdespino.  Instead, Plaintiff makes a factual allegation that a valid contract−the loan modification agreement−exists between him and Ocwen.  (Orig. Pet. ¶¶ 9−10, 16.)  Since Valdespino is not a party to the loan modification agreement, he cannot be held liable for an alleged breach of the agreement.  See American Realty Trust Inc. v. Matisse Capital Partners LLC, 91 Fed. App'x 904, 912 (5th Cir. 2003) (citing Bernard Johnson, Inc. v. Cont'l Constructors, Inc., 630 S.W.2d 365, 369 (Tex. App−Austin 1982) ("[A] suit for breach of contract may not be maintained against a person who is not a party to the contract.")).  Accordingly, Plaintiff fails to state a breach of contract claim against Valdespino and therefore there is no reasonable possibility of recovery against him in state court.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court finds that there is no reasonable possibility of recovery against the substitute trustee on the claims alleged in the original state court petition.  Accordingly, Defendant Valdespino is improperly joined and his citizenship is not considered in establishing the Court's subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff's Motion to Remand (Dkt. # 3) is **DENIED**.

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, April 21, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

11